Azatullah v. Mayorkas, Case No. 23-7722. Good morning, Your Honors. My name is Elise Yablonski. I represent Ahmad Azatullah. May it please the court, the district court erroneously concluded- Can I interrupt you? Of course. Is there a case, one or more cases pending in the Supreme Court that might affect our consideration of this case? Not to my knowledge, Your Honor. If Your Honor is referring to the Bouarfa case, that case does not have any direct relevance here. In that case, there is a narrow question presented to the court for review, which relates to whether judicial review of a nondiscretionary ground for denying a petition, which is concededly subject to judicial review under 1252, should be extended to grant judicial review of the concededly nondiscretionary revocation of a visa petition where the revocation is taking place under the same ground that's nondiscretionary that would have been reviewable if it had come up under denial of a petition. That's the question in Bouarfa. That question will not affect this case one way or the other. I thought that the issue there, who knows, it might morph into something different, but was whether there's jurisdiction to review, and maybe this is what you were saying, a nondiscretionary predicate to an ultimately discretionary judgment. Yes, but in that- So why can't that have some bearing on the issue before us? Well, in that case, there's no dispute of what's reviewable and what isn't under 1252. Discretionary is not reviewable. Nondiscretionary is reviewable. The only question is whether the ground, the nondiscretionary ground, that comes up for review in the context of a discretionary revocation of a visa petition, whether that entitles the discretionary ground to be reviewed. So there's no dispute over what the statute applies to. It's my understanding that the parties in that case agree on the application of the statute to discretionary versus nondiscretionary determinations. And the only question is whether, I guess, there should be a prudential exception to the judicial bar where the ground for review would be reviewable, but for the fact that it came up in a different context. And by the way, this Court's analysis of these jurisdictional issues may well be of great assistance to the Supreme Court. The Buarfa Court did not address the question of whether 1252 applies outside of the context of judicial review of orders of removal. It will be the first time that the Supreme Court ever thanked us for that. Well, they may not. I'm sure they would, Your Honor. I think that was a statement, not a question. Turning first to whether the statute bars judicial review, 1252 only applies to judicial review of orders of removal. In statutory construction, this Court must read the words in context and with a view to their place in the overall statutory scheme. The title of the statute here is Judicial Review of Orders of Removal, and its provisions all address removal. Before the Real ID Act, determinations made outside of removal proceedings potentially received judicial review twice. Once in the district court under the APA on judicial, and again in the Court of Appeals on appeal of the final order of removal. It is that multiple layer of judicial review that Congress was addressing when it enacted the Regardless Clause. The Real ID Act was intended to streamline the removal process by eliminating those multiple layers of judicial review. Under the Regardless Clause, the jurisdictional bar applies regardless of whether the judgment, decision, or action is made in removal proceedings. This clarifies that the statute covers determinations made outside of formal removal proceedings, but still in the context of judicial review of orders of removal. This postpones the review of determinations that can affect an order of removal, even if they are made outside of formal removal proceedings, and channels review into the Court of Appeals. The Regardless Clause works in symmetry with subsection A-5 of section 1252. After the Regardless Clause removes jurisdiction in the district court, A-5 channels it exclusively to the Court of Appeals. This court has already construed subsection A-5 to apply to determinations made outside of removal proceedings that nevertheless indirectly affect an order of removal. In the Delgado v. Quarantio case, which Judge Sack participated in, a 2011 case, the court held that orders outside of removal proceedings are still subject to the exclusive judicial review in the Court of Appeals provided in A-5. The Regardless Clause likewise removes district court jurisdiction over indirect challenges to removal. The two provisions target the same type of determinations made outside of removal proceedings that nevertheless affect an order of removal indirectly, and work together to remove multiple layers of judicial review in the removal context for removable aliens. The district court in this case held that the Regardless Clause broadly extends the judicial bar to strip review of USCIS determinations having nothing to do with removal, and the sole basis for that conclusion was construing the Regardless Clause in isolation, disregarding its place in the statute and its history and its function. The district court's construction would extinguish all review whatsoever of USCIS determinations outside of removal. Congress would not have made such a significant change by inserting a clause, it wasn't even a full sentence, into a statute focused on judicial review of orders of removal. Our proposed construction of the Regardless Clause is the only one that harmonizes the statute's plain language, full text, context, and history. If you're not persuaded, the statute is at least ambiguous. Our construction is at least plausible. This triggers the strong presumption in favor of judicial review of administrative action. That presumption can only be overcome by clear and convincing evidence that Congress intended to broadly strip review over USCIS determinations having no connection to removal. There is no evidence at all that that is what Congress intended. The district court concluded that the language of the Regardless Clause itself provided clear and convincing evidence of congressional intent. But when you're construing an ambiguous statute, the statutory language cannot be clear and convincing evidence of what the statute means. Moving on to the second reason that this statute does not apply. Section 1252A2B does not bar review because subsection 2 of the statute only strips jurisdiction over a decision or action the authority for which is statutorily committed to agency discretion. This is mandated by the plain statutory language. A decision or action the authority for which is specified under this subchapter to be in the discretion of the agency. For which refers back to the decision or action. The particular decision or action must be statutorily committed to agency discretion for subsection 2 to apply. Under settled Second Circuit precedent. Let's just assume hypothetically that we were to agree with you on these reviewability issues. What else do we have to consider? If Your Honor would like me to address the merits. Yes. Under CACAR, a decision that Your Honor authored, remand to the agency is required. Because USCIS entirely failed to consider an important aspect of the problem. Which was the prior determination that Mr. Azatullah's past support of the Mujahideen did not render him inadmissible under the terrorism bar. USCIS did not provide a reasonable explanation for its complete reversal of position on unchanged facts and law as it was required to do under the APA. And USCIS exceeded its statutory authority by rendering Mr. Azatullah an inadmissible asylee. An asylee who has legal status to remain in the U.S. But cannot follow the pathway to permanent residence and citizenship that Congress provided to asylees. Do we have to remand this question to the district court? In CACAR, the court remanded to the district court with instructions to remand directly to the agency. And I believe that's the appropriate result here as well. And under the USCIS determination, they have rendered Mr. Azatullah a non-citizen who is not subject to removal but has nevertheless been labeled an inadmissible terrorist by the United States government. This is the very essence of arbitrary and capricious agency action. I'm also happy to answer any questions about collateral estoppel. So, is it possible in this context to take, and I know that other circuits don't necessarily agree with this approach, but to take hypothetical jurisdiction and review it on that basis and get to the merits? This court can and has in the past asserted, taken hypothetical jurisdiction. But in this case, I think the basis for jurisdiction is clear. This is an area of law that calls out for clarification by this court. There are two bases. The court can have its choice whether the statute doesn't apply outside of removal or whether Mr. Azatullah's challenge of something other than a discretionary, the substantive discretionary determination by the agency. For either of those reasons, the statute does not apply. And so although I think the court could take, assume jurisdiction, I think in this case, it should reach the merits and decide the jurisdiction. But as an arbitrary and capricious challenge, which is one of your, I think, arguments, isn't that necessarily a challenge to agency discretion? No. When you read the arbitrary and capricious standard under the APA, it is significantly different from an arbitrary and capricious standard that might be applied in other contexts. Why do you say that? Under the APA, under CACAR, arbitrary and capricious is defined as the USCIS entirely failing to consider an important aspect of the problem or failing to provide a reasonable explanation for its actions. This isn't reconsidering what the agency substantively decided in its discretion. This is constraining agency conduct and maintaining a balance of powers over agency action by subjecting the agency to judicial review for its compliance with law, which it has no discretion to disregard. I see my time is up. Thank you. Thank you. We have some time for rebuttal. We'll hear from the governor. Good morning, Your Honors. Good morning. Special Assistant U.S. Attorney Joshua Press here on behalf of the defendants' appellees. May it please the Court. Your Honors, we think that 1252A2B2 is clear. It rebuts the presumption of reviewability much for the same reasons that the Supreme Court two years ago found the exact same with respect to 1252A2B1. The language in 1252... In which case? In Patel v. Garland, Your Honor. I think that was April 2022. It was from April 2022. But the language in 1252A2B1, which was in Patel, was about any judgment regarding the granting of relief. And then what subsection B1 lists out are different provisions that Congress was interested in. I think one of them is about a waiver for a marijuana conviction. And then the one that's most relevant to this case would be about adjustment of status. But the language between 1 and 2 is very different, counsel, isn't it? Well, 1 says any judgment, and the Supreme Court was pretty clear about their interpretation there that it affects all subsidiary decisions that go into the judgment. Any judgment. You're correct that it's different in the sense that B2 is even broader because it's any other decision or action. But then it's limited by the language, the authority for which is specified. That's right. And how can we read that language, the authority for which is specified under this subchapter, to be in the discretion of the Attorney General? How can we read that to mean anything other than it applies only to discretionary decisions of the Attorney General or the Secretary of Homeland Security? I mean, what else does the for which refer to? Well, it's actually within Your Honor's question because it's which is specified under the subchapter. That's actually doing the language. And the key word there is what is specified. And I think since 2004, for example, I think we cite to Soltan v. Department of Justice from Judge Leo. And then 2B, in the discretion of the Attorney General, we should just ignore that part of it? No, no, no. That's modifying which is specified. So this subchapter, I think, I mean. And I guess that's my question. So it does apply only to discretionary decisions? No, it applies to decisions that are done under the statutory authority, which is specified in the language, to be discretionary. Doesn't that render the language meaningless, then? No. This Court, in fact, has already held as much in Ruiz v. McCasey from 2009, where it says that what you look to for precisely your question is the language in the statute. And if the language in the statute is, by its nature, discretionary, then it applies. The jurisdictional stripping bar applies. The best evidence I can give you for that would be, aside from Ruiz v. McCasey and this Court's opinions itself, both in Ruiz and two years ago as well in Nuritaja, would be if you look at the statutes in subsection 1, or B1, they all have nearly the same language, operative language, when they're describing how it's discretionary. So they'll say the attorney general may. They'll say that he may in his discretion. And so that is the type of provision that Congress had in mind here. It's, in fact, why the Supreme Court in Kukana v. Holder described B2 as a catch-all provision to catch specifically decisions of the same genre that are listed in subsection B1. So it's not just the, let's just say there was a discretionary balance of determination made off to the side. It's under that subsection. If those subsections themselves are described as discretionary power, then it kicks in. I guess I struggle a little with the district court's decision reading that language and citing to, I believe it's the Marinos case?  It says the for which, under the chapter, is in the discretion of the attorney general, to say that that doesn't relate back to any decision or action. I found the logic of that to be conclusory and circular. And I don't understand how we are to read the for which any different way, that clause. And I guess, is there any other authority other than Marinos? It's this court's opinion in Ruiz. I'll read it to you right now. No, other than that case. Is that the only case? This court's opinion in Ruiz v. Mukasey, 2009. R-U-I-Z. And then Attorney General Mukasey, former Judge Mukasey. Quote, the important question is whether the text of the subchapter in which the relevant provisions appear, quote, That's the issue. And it's not, because I've had cases before where USCIS will do a standard ineligibility determination. And then off to the side, they'll make a discretionary balancing determination as well. But it's not just the discretionary balancing determination. I don't want to take up too much. Oh, no, it's fine. This goes to the heart of the issue. I have questions, but I would like you, if you could, respond to the first question that my colleague asked about the pending Supreme Court case. And whether or not, both of my colleagues asked, whether or not that case wouldn't give us some guidance in resolving the issue here in this case. Because it involves the same subsection, albeit your opponent said, well, the issue there, there's no question about whether it's discretionary or not. But what's your position on the pending Supreme Court case? We think it would provide guidance, or at least as much guidance to this Court as Patel provided guidance. The reason being is because, yes, it's about a different substantive statute. So, for example, the substantive statute here is about adjustment of status for asylees. So that's true. There's no denying that. But it does involve section 1252A2B2. And it goes precisely to Your Honor's question. Well, does that mean just an explicitly discretionary decision? Or would it include any decision covered at all, analogous to Patel, which says the word judgment subsumes all subsidiary decisions? Are they going to do the same thing for subsection A2B2? And if they were to do that and resolve the circuit split, which, by the way, this Court is on the majority side, not a surprise. If they were to do that, I think it would be very instructive to Your Honors with respect to this case, even though it does involve, like I said, a different substantive relief that's being asked for. I think turning to, let's see here. Judge Lohia, you asked about some of the merits decision. And my opposing counsel cited to your opinion in Kakar, which was brilliantly written. But it is distinguishable. I have no memory, really, of that case whatsoever. But go ahead. Well, it actually was a somewhat similar case out of the Eastern District of New York. And it involved a petitioner whose petition was denied. It came out, your decision in Kakar came out a few months before Patel. So this jurisdictional provision never really came up. It was never discussed. But he was denied because of the terrorism in the Missability Ground. And it came up to this Court. It was an APA review. And it was really just an APA decision. Because your Honor, for the Court wrote that I believe the illegality of the terrorism that was alleged was never passed upon by the agency. And the District Court sort of papered over that by saying, well, it's obvious that it was illegal. And that obviously gets to, that's an important consideration that the agency should have made. And if it's not reflected in the record that they ever made that, then it does violate APA arbitrary and capricious review. Next to your question with respect to hypothetical jurisdiction, we don't think that that would be appropriate here as it was in Rockmont, for example, which I think was about a year ago. But as a general matter, within our circuit, it is appropriate under, even in the context of asylum applications, is it not? It can be. But I think the reason why it's not appropriate here is because it's sort of limited to where the jurisdictional question is ambiguous, but the merits question is easy, then you can assume hypothetical jurisdiction. I think the problem with that, as Judge Sachs' question to opposing counsel was getting at, is substantively the District Court never really decided any of the merits here. And so you don't have the benefit of District Court review as you did in Kakar, as this Court did in Rockmont a year ago, where it did assume hypothetical jurisdiction to avoid this jurisdictional issue. And because the District Court's analysis was solely limited to, or almost, let's just say 99% limited to this jurisdictional issue, we think hypothetical jurisdiction would not be appropriate here. I see my time is short. In conclusion, we did submit a 28-J letter a few months ago about the Fourth Circuit's determination in a nearly identical case in Scheibon v. Mayorkas.  Simply because it shows exactly how circuit courts are reacting to interpreting 1252A2B2 after Patel and that they are using Justice Barrett's... So just so I understand it, maybe I've got this wrong, but the government's view is that Patel, at some level, aggregates our pre-Patel case law? Yes, Your Honor. So, for example, in the District Court, I think in the briefing, the other side is bringing up Sepulveda. That's a decision from about 20 years ago by then-Judge Sotomayor. Its analysis and this Court's analysis in Sepulveda is directly the opposite of what Justice Barrett's approach for the majority in Patel is saying regarding 1252A2B1. So with respect to... How does that affect... I mean, maybe this goes back to something you said earlier and something your friend on the other side said earlier, but how does that affect our case law-related section B2? Well, in Rachman, a year ago, this Court said that this jurisdictional issue was not decided after Patel, and that's why it assumed hypothetical jurisdiction. So the bottom line is it's a lot muddier of a question now than it was before Patel. This also goes back to whether or not we should wait for the Supreme Court's decision in Buarfa. Yes, Your Honor. But the government's contention, just so that I get it more precisely, is that for our purposes in connection with the issue precisely before us, the difference between B1 and B2 is not significant enough. That would be a reason why Buarfa might be instructive, and we should also maybe take a look at the language from B1 in determining the scope, jurisdictional or otherwise, of B2. Is that correct? I want to be a little clearer than that. So in Buarfa, that is a subsection 1252A2B2 decision. So the language is the same? Yes. Any confusion about, well, that subsection B1 says judgment, subsection B2 says any other decision or action, that should be resolved. I mean, I'm presuming that they will discuss Patel, at least in some. Although there was an agreement in Buarfa that does not seem to exist here. I'm not sure about that. I've worked with the person who was litigating in Buarfa. So you're not sure about that. Well, let's just say that I disagree. Okay. I disagree. And the reason why I disagree is because I've worked with the attorney who worked on that case and helped prepare him for oral argument at the Eleventh Circuit. And it's not my understanding that we really agreed about much of anything. It was very similar and analogous to this case because the entire dispute was, is this a challenge to the substantive determination for the revocation, and is that barred for consideration or for judicial review by subsection 1252A2B2. And if you go back, if you listen to the oral argument there, if you look at Judge Pryor's opinion for the Eleventh Circuit, it's pretty clear that we disagree about how that provision, both 1252A2B2 and whether the language in the revocation statute is discretionary. All of that is in dispute. I will say that a similar policy argument is made in Buarfa that, and we essentially agree with this, that reading it the way that we now read it after Patel would mean that only decisions that come up to this court through petitions for review would get judicial review, and that's 1252A2D, which we discussed in our briefs. But in Patel, the Supreme Court indicated that was probably what Congress intended, and we agree with that approach. If there are no further questions, we ask that the district court's dismissal be affirmed. Thank you. We'll hear some rebuttal. Counsel. Thank you. One last point on Buarfa. No party in that case has raised the argument that 1252 does not apply outside of the removal context. So whatever happens in Buarfa, this court will still need to address that argument here. Buarfa won't resolve that question. Does it involve the issue of whether B2, subsection 2, applies only to discretionary versus nondiscretionary? Well, based on— And wouldn't that be helpful to this court in resolving this case? Look, the Supreme Court can reach whatever it wants to reach, and certainly subsection 2 is the statute in front of the court in that case. But it is not the center of the dispute. And again, I would just point out that this court's learned analysis of this statute, which will hopefully be decided before Buarfa is even briefed or docketed in the Supreme Court, which it currently isn't, will be of help to the Supreme Court, especially with respect to a global review of what 1252 means and what Patel means in the context of that statute. I next want to turn a little bit to this court's settled precedence construing subsection 2, and I'm referring to Mantino v. Johnson, Firstland, Sharkey, Neurotodger, and other cases. Under those cases, this court has already held that subsection 2 only bars review of the agency's substantive discretionary determinations. The procedure surrounding the substantive decision remains reviewable, and that's because compliance with procedure is not discretionary. The district court here held that subsection 2 strips jurisdiction over discretionary determinations in any associated decision or action, discretionary or otherwise, and that's the position being advanced by the government here. The district court in Mantino reached the same conclusion, and this court reversed. This court held that subsection 2 does not bar review of all aspects of an adjustment of status denial. What matters is what the relief that the plaintiff is seeking. So the question then becomes whether Patel's construction of subsection 1 changed anything about these controlling precedents in the Second Circuit, and it did not. The Second Circuit was construing the explicit reference to discretion in subsection 2, which is absent from subsection 1, and its absence from subsection 1 was of great significance to the Supreme Court in its holding that it applies to all judgments regarding the enumerated relief, whether discretionary or not. To apply that holding here to subsection 2 would require reading discretion, the plain word discretion, out of the statute. And if I may, just one comment on Scheiban. Although that case is very similar factually to this case, in that case, the court did not consider the arguments made here that collateral estoppel and the APA's procedural requirements are not discretionary. It did not apply Second Circuit law, and it also concluded that Mr. Scheiban's collateral estoppel argument was not reviewable because it was fact-bound. I have searched for the basis for the court's conclusion that somehow that collateral estoppel determination I'm sorry, this is the Fourth Circuit in Scheiban? How that court could have concluded that collateral estoppel is a fact-bound determination, but I think it might have had something to do with the fact that Mr. Scheiban wasn't directly applying collateral estoppel. He had some kind of an argument that his application shouldn't have been denied because he never received discovery of the transcript of the proceedings at the asylum stage. And that was all his case was about. He did not move for summary judgment in the district court. He only moved for production of the transcript. And when he opposed the government's motion for summary judgment, he opposed it on the ground that he hadn't received discovery. So that's the basis on which the court in Scheiban resolved the collateral estoppel argument. That case is of no relevance here. Unless there are any other questions? So the case law is all over the map in one sense. It is, Your Honor. Because you tell us to ignore, or not ignore, but distinguish some cases and you rely on others. It seems that there is not a uniform view on this. And maybe this relates to your ambiguity argument, but maybe not. Your Honor, it's very important to examine the arguments being made in each of these cases because not everyone in Mr. Asitula's position has access to federal litigation counsel with experience construing federal subject matter jurisdiction and federal statutes. So oftentimes these cases come up in contexts that aren't properly briefed and argued. And without proper argument, the courts don't reach the right conclusions. Well, on that note, thank you for your proper argument. Thank you. And on both sides, we will reserve the decision.